## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 14 2017, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Assistant to the
State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: B.W. (Minor Child),
Child in Need of Services,

J.W. (Father),
*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,
*Appellee-Petitioner*

March 14, 2017

Court of Appeals Case No.
52A02-1610-JC-2323

Appeal from the Miami Circuit
Court

The Honorable Timothy P. Spahr,
Judge

Trial Court Cause No.
52C01-1606-JC-64

**Baker, Judge.**

[1] J.W. (Father) appeals the order declaring his son, B.W. (Child) to be a Child in Need of Services (CHINS). Father contends that the evidence is insufficient to support the CHINS adjudication. Finding the evidence sufficient, we affirm.

## Facts

[2] Child was born in July 2002. In April 2015, Child was the subject of a CHINS proceeding that was resolved with the establishment of a guardianship with his aunt and uncle (Guardians). A requirement of the guardianship was that Child was to live with Guardians. Father was permitted to exercise reasonable parenting time. To regain custody of Child, Father was required to complete certain services and requirements. He never did so, and the guardianship remained in effect at the time of the current CHINS factfinding hearing.

[3] In June 2015, Child's mother died. In July 2015, Child's Guardians separated and Aunt moved to Missouri. Child stayed with Father and paternal relatives in Indiana for the summer and early fall and moved to Missouri in October 2015 after the paternal relatives "had problems with" Child. Appellant's Br. p. 6. Child attended approximately one week of school in Missouri before getting expelled for fighting. After the expulsion, he remained in Missouri for nearly three months. He was not in school during that time.

[4] In December 2015, Child returned to Indiana to live with Father and his girlfriend, but they did not enroll him in school. Between that time and June 2016, Child bounced around between different caregivers, including: Father in Indiana; Father and his girlfriend in Indiana; Father, his girlfriend, and Aunt in

Missouri; and Father's girlfriend and her relatives. Child was not enrolled in school during this time. Father later testified that he attempted to enroll Child in school in Indiana but that the principal would not let Child enroll because of the previous expulsion. Father also stated that he began to research the possibility of Child enrolling in an online school, but he went to jail in March 2016 on an unrelated criminal matter,[1] which derailed the process.

[5] On June 14, 2016, the Department of Child Services (DCS) received a report regarding Child. During its investigation, DCS learned that Child had been at the home of paternal relatives (with Father's permission) when law enforcement learned that there was a methamphetamine lab in the home. Child was taken to the hospital, where he tested positive for methamphetamine and THC. Child admitted to the Family Case Manager (FCM) that he had used both drugs.

[6] On June 15, 2016, DCS filed a petition alleging that Child was a CHINS, based both on the drug use and Child's extended absence from school. DCS removed Child from Father's care and custody and placed him at the Youth Opportunity Center (YOC), a residential treatment facility. On July 9, 2016, Child ran away from YOC, and he was still on the run at the time of the factfinding hearing. Child was with his half-brother and reached out to Father to ask for money; he called Father three or four times while on the run. Father did not cooperate

---

[1] The record does not reveal the nature of the unrelated criminal matter.

with DCS's attempts to find Child, failing to inform DCS that Child had reported that he was with a family friend in North Carolina.

[7] At some point between the filing of the CHINS petition and the factfinding hearing, Father asked the FCM to refer him for individual therapy. She did so, but Father did not follow through and has not participated in that service.

[8] The trial court held a factfinding hearing on August 10, 2016, and on August 28, 2016, the trial court entered its order finding Child to be a CHINS. A dispositional order was entered on September 22, 2016, ordering Father, Child, and Guardians to participate in services. Father now appeals.[2]

## Discussion and Decision

[9] Father contends that there is insufficient evidence supporting the trial court's CHINS finding. Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.R.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only

---

[2] Child's Guardians are parties to the CHINS case, but are not participating in this appeal.

upon a showing that the decision of the trial court was clearly erroneous. *Id.*

> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253–54 (Ind. 2012) (footnote omitted).

[10] Here, DCS alleged that the child was CHINS pursuant to Indiana Code section 31-34-1-1, which provides as follows:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1)  the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2)  the child needs care, treatment, or rehabilitation that:
>
>> (A)  the child is not receiving; and
>>
>> (B)  is unlikely to be provided or accepted without the coercive intervention of the court.

[11] Our Supreme Court has interpreted this provision to require "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.,* 2 N.E.3d 1283, 1287 (Ind. 2014).

[12] The undisputed evidence in this case reveals that between the time of Child's expulsion in September 2015 and the filing of the CHINS petition in June 2016, he was not enrolled in school, be it a brick and mortar school, an online school, or a home schooling program. In other words, he attended only one week of school during the 2015-16 school year. Also during those months, Child was bounced between multiple residences and multiple caregivers in multiple states. And in June 2016, Child admitted to using methamphetamine and THC after testing positive for both substances.

[13] These undisputed facts, alone, readily support the trial court's conclusion that Child's physical or mental condition was seriously endangered as a result of the inability, refusal, or neglect of Father and Guardians to supply Child with necessary education and supervision. Moreover, Child clearly needs care and treatment that he is not currently receiving. Finally, given that Father and Guardians had had approximately nine months to solve Child's educational situation (or to ask for help) and had failed to do so, that Father had requested a referral for therapy but failed to engage with that service provider, and that Father had failed to cooperate with DCS after Child absconded from his placement at YOC, the evidence likewise establishes that the care and treatment

that Child needs will not be provided or accepted without the coercive intervention of the court.

[14] Father raises the following arguments in response to the CHINS finding: (1) Child was expelled because of his own choices, not because of Father's neglect; (2) Father attempted to enroll Child in school in Indiana but the principal would not permit the enrollment because of the past expulsion, so Father began researching online schooling opportunities but was interrupted when he was arrested and incarcerated; (3) Aunt attempted to enroll Child in summer school but he refused to go; and (4) Father was not aware of Child's drug use or of the presence of drugs in the home of the paternal relatives. The second and fourth arguments are mere requests that we reweigh evidence and reassess witness credibility—a request we decline. The first argument is an attempt to shift blame to Child, which is not only inappropriate but also evidences the underlying problem. Finally, the third argument—that Child refused to go to summer school and his Guardian was unable to make him go— supports the CHINS finding. This family needs help to manage and treat Child's behavior, and the CHINS adjudication and services that go along with it will provide them the assistance they sorely need.

[15] The judgment of the trial court is affirmed.

Mathias, J., and Pyle, J., concur.